UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ALPHA INSULATION & WATER PROOFING, INC.,**

      **Plaintiff,**

    v.                                        Civil Action 2:20-cv-5938
                                                  Judge Michael H. Watson
                                                  Magistrate Judge Chelsey M. Vascura

**GARY J. HAMILTON,**

      **Defendant.**

## REPORT AND RECOMMENDATION

    Plaintiff, Alpha Insulation & Water Proofing, Inc., commenced this action in the Court of Common Pleas for Franklin County, Ohio, for declaratory judgment against Defendant, Gary J. Hamilton, arising out of Defendant's alleged breach of various confidentiality, non-competition, and non-solicitation agreements after Plaintiff terminated Defendant's employment. Defendant removed the action to this Court on November 18, 2020, relying on diversity jurisdiction pursuant to 28 U.S.C. § 1332. This matter is before the Court on Plaintiff's Motion to Remand (ECF No. 5), in which Plaintiff contends that the amount in controversy required by § 1332 to confer federal jurisdiction is not met. For the following reasons, it is **RECOMMENDED** that Plaintiff's Motion to Remand (ECF No. 5) be **GRANTED** and that this case be **REMANDED** to the Court of Common Pleas for Franklin County, Ohio.

                                               **I.**     **BACKGROUND**

    Plaintiff, Alpha Insulation & Water Proofing, Inc. ("Alpha"), is a construction specialty contractor business that provides commercial insulation, waterproofing, fireproofing, and

firestopping to homebuilders, businesses, and residential customers. (Compl. ¶ 3, ECF No. 2.) Defendant, Gary J. Hamilton ("Hamilton"), was the owner and president of Hamilton Benchmark, a construction contractor business offering firestopping and passive fire protection solutions to seal wall and floor assemblies. (*Id.* ¶ 7.) On November 12, 2018, Alpha and Hamilton Benchmark entered into an Asset Purchase Agreement whereby Hamilton Benchmark agreed to sell substantially all of its assets to Alpha. (*Id.* ¶ 9.) Additionally, Hamilton was provided at-will employment as Alpha's Wisconsin's branch manager. (*Id.* ¶ 10.) As part of the transaction, Alpha and Hamilton entered into an Equityholder Restrictive Covenant Agreement ("ERCA") and Key-Employee Restrictive Covenant Agreement ("KERCA") to prevent Hamilton from using or selling his Hamilton Benchmark confidential information and customer relationships to a competitor of Alpha. (*Id.* ¶ 11.) Hamilton also agreed to non-compete and non-solicitation provisions, applicable for five years from the date of Alpha's acquisition of Hamilton Benchmark and for two years from the date of Hamilton's termination of employment with Alpha. (*Id.* ¶ 15.)

Alpha subsequently terminated Hamilton's employment, entering into a Severance Agreement with Hamilton on June 25, 2020. (*Id.* ¶¶ 27–28.) Alpha alleges that since his termination, Hamilton has engaged in conduct that violate the ERCA and KERCA agreements; namely, using or selling Alpha's and Hamilton Benchmark's confidential information, interviewing for employment with Alpha's competitors, and soliciting Alpha's customers. (*Id.* ¶¶ 30–34.) Hamilton contends that the Severance Agreement superseded the ERCA and KERCA agreements, and that he is therefore not in violation of the ERCA or KERCA agreements. (*Id.* ¶¶ 35, 37.)

Alpha commenced this action in the Court of Common Pleas for Franklin County, Ohio, on October 15, 2020. (Compl., ECF No. 2.) The Complaint seeks a declaratory judgment as provided by the Ohio Declaratory Judgment Act, Ohio Revised Code Chapter 2721, that Hamilton remains bound by the ERCA and KERCA agreements. (*Id.* at 11.) Alpha also seeks an award of its reasonable attorney's fees and legal expenses, as provided by the ERCA and KERCA, and "[s]uch other legal, equitable and ancillary relief that is deemed appropriate." (*Id.*)

On November 18, 2020, Hamilton removed the action to this Court, relying on diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Notice of Removal, ECF No. 1.) In support of federal subject-matter jurisdiction, the Notice of Removal stated only, "the matter in controversy exceeds the sum or value of $75,000, inclusive of contractual attorneys' fees and injunctive relief, exclusive of interest and costs, and is between citizens of different states and/or foreign states." (*Id.* ¶ 2.)

Alpha then filed the present Motion to Remand, in which it argues that Hamilton has failed to demonstrate the amount in controversy exceeds $75,000 as required by § 1332. (ECF No. 5.)[1] In opposition, Hamilton provides a declaration setting forth various monetary values related to his work for Alpha prior to his termination, and argues that, in combination with the

---

[1] Although the parties do not raise this issue, Hamilton's statement regarding the parties' diversity of citizenship (which is copied from Alpha's Complaint) is deficient. Hamilton alleges that he is an individual who resides in Wisconsin, and that Alpha "is incorporated in the State of Texas and is a wholly own subsidiary of Installed Building Products, a company with its principal place of business is in Franklin County, Ohio." (Notice of Removal ¶ 3, ECF No. 1.) Although this statement sufficiently establishes Hamilton's Wisconsin citizenship, Alpha's citizenship is determined by its state of incorporation and its *own* principal place of business (not that of its corporate parent). *See Schwartz v. Elec. Data Sys., Inc.*, 913 F.2d 279, 283 (6th Cir. 1990). However, the Court's research indicates that Alpha's principal place of business is in Georgia, where it is headquartered. *See Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010). Accordingly, Hamilton's deficient allegations regarding citizenship notwithstanding, complete diversity as required by § 1332 appears to be satisfied.

3

attorney's fees and ancillary relief sought by Alpha, the amount in controversy meets the jurisdictional threshold. (ECF No. 11.) On reply, Alpha contends that Hamilton's opposition falls short of providing evidence of Alpha's profits attributable to Hamilton's employment, and that his arguments concerning attorney's fees and ancillary relief are purely speculative. (ECF No. 13.)

## II.   STANDARDS FOR DETERMINING THE AMOUNT IN CONTROVERSY

Generally, a defendant may remove a civil case brought in a state court to federal court if it could have been brought there originally. 28 U.S.C. § 1441(a); *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000). A federal court has original "diversity" jurisdiction where the suit is between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of costs and interest. 28 U.S.C. § 1332(a); *Rogers*, 239 F.3d at 871. A defendant may remove a case by filing in the federal court a notice of removal. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 83 (2014) (quoting 28 U.S.C. § 1446(a)). Where the complaint seeks nonmonetary relief, the notice of removal may assert the amount in controversy. 28 U.S.C. § 1446(c)(2)(A). The notice of removal must contain "a short and plain statement of the grounds for removal" but "need not contain evidentiary submissions." *Dart Cherokee*, 574 U.S. at 83.

If the amount in controversy in the notice of removal is challenged, however, as by a motion to remand, the defendant bears the burden "to show by a preponderance of the evidence that the amount in controversy requirement has been met." *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001) (citing *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 158 (6th Cir. 1993)); *Dart Cherokee*, 574 U.S. at 89 ("Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation."). "That evidence can come from many sources, including a fair reading of the

complaint if it contains 'clear allegations . . . that the case involved a sum well in excess of the $75,000 minimum.'" *Total Quality Logistics, LLC v. Summit Logistics Grp., LLC*, No. 1:20-CV-519, 2020 WL 6075712, at *6 (S.D. Ohio Oct. 14, 2020) (quoting *Crimaldi v. Pitt Ohio Express, LLC*, 185 F. Supp. 3d 1004, 1008 (N.D. Ohio 2016)). But actual evidence is required; "[m]ere speculation is insufficient." *Terry v. Phelps KY Opco, LLC*, No. 7:20-cv-23, 2020 WL 2500306, at *2 (E.D. Ky. Apr. 20, 2020) (citations omitted). Rather, the defendant must adduce "competent proof" to establish the requisite amount in controversy. *Gaffard*, 997 F.2d at 160 (quoting *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189 (1936)).

### III. DISCUSSION

Hamilton argues that Alpha seeks three categories of relief, each of which independently satisfies the amount in controversy requirement: a declaratory judgment, an award of attorney's fees, and other legal, equitable and ancillary relief that is deemed appropriate. The undersigned will consider each category in turn.

**A. Declaratory Judgment**

The parties agree that "[i]n actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Freeland v. Liberty Mut. Fire Ins. Co.*, 632 F.3d 250, 253 (6th Cir. 2011) (quoting *Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 347 (1977)). Applying this principle, the United States Court of Appeals for the Sixth Circuit has said that, "[w]here a party seeks a declaratory judgment, 'the amount in controversy is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation.'" *Id.* (quoting *Lodal, Inc. v. Home Ins. Co. of Ill.,* No. 95–2187, 1998 WL 393766, at *2 (6th Cir. June 12, 1998) and *Beacon Constr. Co. v. Matco Elec. Co.,* 521 F.2d 392, 399 (2d Cir. 1975)).

5

The parties further agree that in this case, the value of the declaratory judgment that Alpha seeks to enforce the parties' confidentiality, non-compete, and non-solicitation agreements is to be measured by "the profits earned by the employer on business generated by the employee during the period immediately preceding his termination." *Absolute Mach. Tools, Inc. v. Clancy Mach. Tools, Inc.*, 410 F. Supp. 2d 665, 669 (N.D. Ohio 2005), *quoting Basicomputer Corp v. Scott*, 791 F. Supp. 1280, 1286 (N.D. Ohio 1991); *see also Acuity Merch. Servs. v. Grubbs*, No. 1:06-cv-97, 2006 U.S. Dist. LEXIS 116878, at *7 (E.D. Tenn. July 19, 2006) ("[T]he value of a non-compete agreement can be determined by looking to the profits earned by the employer on business generated by the employee during the period immediately preceding his termination or the value of the plaintiff's lost revenue, the value of the future effect of a defendant's breach upon all the plaintiff's other contracts with its sales agents, and the value of trade secrets and confidential information acquired by the defendants during their employment."); *FirstEnergy Sols. Corp. v. Flerick*, 521 F. App'x 521, 525 (6th Cir. 2013) (finding amount in controversy satisfied when employee subject to a non-compete agreement generated over $300,000 in gross profits in the year prior to his resignation).

In an attempt to satisfy this standard, Hamilton provides a declaration stating the following:

- In 2019, Alpha's Wisconsin branch, run by Hamilton, had sales goals of $3 million at a 30% gross profit margin; actual revenue for 2019 was $1.2 million at a 50% gross profit margin. (Hamilton Dec. ¶¶ 6–7, ECF No. 11-1.)  The Wisconsin branch also generated new sales of $3 million in 2019. (*Id.* ¶ 7.)

- In 2019 prior to his termination, Hamilton "managed several high-profit-margin jobs for the Wisconsin branch." (*Id.* ¶¶ 8–12). He further states that "[f]or these projects, alone, the sum of profits Alpha earned exceeded $75,000" and that nominations and awards received by these projects "provided intangible value and goodwill to Plaintiff Alpha within the industry." (*Id.* ¶¶ 11–12.)

- Alpha alleges in its Complaint that Hamilton was in charge of providing estimates for firestopping, fireproofing and waterproofing for Alpha to obtain a contract for a large

6

>project—the St. Camillus Independent Living Tower. (Compl. ¶ 32.) Alpha also alleges that after Hamilton's termination, he continued to bid on the St. Camillus project in violation of his noncompete agreements, in order to redirect the St. Camillus project from Alpha to Hamilton's new employer. (*Id.* ¶¶ 32–33.) Hamilton then states, "[t]he total value of the St. Camillus Independent Living Tower project is an estimated $200,000." (Hamilton Dec. ¶ 13.)

These averments do not satisfy Hamilton's obligation to adduce "competent proof" that the value of the declaratory judgment sought by Alpha exceeds any particular amount, let alone $75,000. First, Hamilton cannot claim credit for generating all profits reaped by the Wisconsin branch, simply by virtue of his managing the branch. Similarly, his "management" of several allegedly high-profit-margin projects does not indicate that the profits from those projects were generated by him. Moreover, his assertion that the profits on those particular projects exceeded $75,000 is wholly conclusory, and he has made no attempt to quantify the "intangible value and goodwill" the projects allegedly provided to Alpha. Finally, although Hamilton is correct that Alpha singled out the St. Camillus project as being generated (and jeopardized) specifically by Hamilton, Hamilton provides only a gross revenue figure for the St. Camillus project and is silent as to the relevant profits.

This Court has several times rejected attempts to establish the value of declaratory or injunctive relief arising out of non-compete agreements when the proponent of jurisdiction fails to provide evidence of relevant profits. *See*, *e.g.*, *Total Quality Logistics, LLC v. Adams*, No. 1:19-CV-00265, 2019 WL 5690609, at *3 (S.D. Ohio Nov. 4, 2019); *Total Quality Logistics, LLC v. Grigoryan*, No. 1:18-cv-363, 2019 U.S. Dist. LEXIS 197760, at *8 (S.D. Ohio Mar. 22, 2019); *Midwest Motor Supply Co. v. Addis*, No. 2:05 CV 0733, 2006 WL 181990, at *3–4 (S.D. Ohio Jan. 23, 2006). Accordingly, Hamilton's failure to provide evidence of the profits generated by his employment prevents the undersigned from concluding by a preponderance of the evidence that the declaratory judgment sought by Alpha is valued at any particular amount.

7

B.     **Attorney's Fees**

"As a general rule, attorneys' fees are excludable in determining the amount in controversy for purposes of diversity, unless the fees are provided for by contract or where a statute mandates or expressly allows the payment of such fees." *Williamson v. Aetna Life Ins. Co.,* 481 F.3d 369, 376 (6th Cir. 2007). Here, Alpha seeks an award of its reasonable attorney's fees and legal expenses, as provided by the ERCA and KERCA, and therefore attorney's fees are appropriately considered in determining the amount in controversy.

Again, however, Hamilton fails to adduce competent proof that Alpha will incur attorney's fees in any particular amount. Hamilton submits only that if he does not prevail in the trial court, he is likely to appeal, and conclusorily states that "[i]t is far more likely than not that this matter will result in both parties expending considerably more than $75,000 in attorneys' fees and costs." (Mem. in Opp'n 7, ECF No. 11.)

Nor are the cases relied on by Hamilton persuasive, as none are similar to the action at bar. *See*, *Developers Diversified of Tennessee, Inc. v. Tokio Marine & Fire Ins. Co.*, No. 3:04-CV-00015, 2019 WL 1861322 (M.D. Tenn. Apr. 25, 2019) (awarding $1.7 million in attorney's fees on declaratory judgment action regarding insurance coverage, which also required defense of counterclaim for breach of contract, significant discovery, two rounds of summary judgment briefing, and multiple appeals); *Owner-Operator Indep. Drivers Ass'n, Inc. v. Bissell*, 210 F.3d 595 (6th Cir. 2000) (affirming district court's award of over $500,000 in a 42 U.S.C. § 1983 declaratory judgment action against the Tennessee Public Service Commission for allegedly illegal searches of trucks); *Simbo Properties, Inc. v. M8 Realty, L.L.C.*, 2019-Ohio-4361, 149 N.E.3d 941 (8th Dist.) (affirming state trial court's award of over $170,000 on declaratory judgment action regarding breach of a commercial lease, also involving claims for compensatory damages, counterclaims, discovery, summary judgment briefing, trial, and appeals); *Hustler*

*Cincinnati, Inc. v. Elm 411, L.L.C.*, 2014-Ohio-5648 (1st Dist.) (affirming state trial court's award of over $170,000 on declaratory judgment action regarding landlord-tenant dispute that entailed extensive discovery, including numerous depositions, some taken in California, cross-motions for summary judgment, trial and appeals).[2] Notably, all of these cases would have involved significant factual discovery. In contrast, as Alpha points out, the present action involves a fairly narrow legal question of contract interpretation—whether Hamilton's obligations under the ERCA and KERCA survive in the face of the Severance Agreement's integration clause—which should not require in-depth discovery or extensive briefing.

Having failed to provide relevant evidence or case law, Hamilton has not provided any basis on which the undersigned could conclude by a preponderance of the evidence that an award of attorney's fees will satisfy the amount in controversy requirement.

**C.        Other Legal, Equitable, and Ancillary Relief that is Deemed Appropriate**

Hamilton is correct that Alpha seeks unspecified relief ancillary to its claim for a declaratory judgment. However, Hamilton again provides no evidence of what that ancillary relief might entail, stating only, "[i]n this case, if the Court declares judgment in Alpha's favor, the Court may award a legal or equitable remedy in Alpha's favor in excess of $75,000." (Mem. in Opp'n 8, ECF No. 11.) This wholly conclusory statement does not permit the undersigned to conclude by a preponderance of the evidence that Alpha's requested ancillary relief will contribute in any way to the amount in controversy.

---

[2] Hamilton's citation to *Reusser v. Saxon Mortg. Servs., Inc.* is also unavailing. No. 2:12-cv-00087, 2012 WL 3241973, at *5 (S.D. Ohio Aug. 3, 2012) (holding only that amount in controversy was satisfied by compensatory and punitive damages sought in the complaint, and therefore the Court need not quantify the amount of attorney's fees sought).

## IV. DISPOSITION

In sum, for the foregoing reasons, Hamilton has failed to establish by a preponderance of the evidence that $75,000 amount in controversy required by 28 U.S.C. § 1332 is satisfied.  It is therefore **RECOMMENDED** that Plaintiff's Motion to Remand (ECF No. 5) be **GRANTED** and that this case be **REMANDED** to the Court of Common Pleas for Franklin County, Ohio.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE